**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**J. CAIDOR,**

                                        **Plaintiff,**

                                                                        **5:05-CV-297**
                v.                                                      **(FJS/GJD)**

**M&T BANK; M&T BANK CORP.; JOHN DOYLE; PHILIP McCOY;[1] MICHAEL HARRINGTON; C. DEVITO;[2] CITY OF SYRACUSE; SYRACUSE POLICE DEPARTMENT; ONONDAGA COUNTY; and ONONDAGA COUNTY SHERIFF CUSTODY BOOKING DIVISION,**

                                        **Defendants.**

---

**APPEARANCES**                          **OF COUNSEL**

**J. CAIDOR**
Syracuse, New York 13204
Plaintiff *pro se*

**CITY OF SYRACUSE**                      **JOSEPH FRANCIS BERGH, ESQ.**
**CORPORATION COUNSEL**
233 East Washington Street
Room 301 City Hall
Syracuse, New York 13202
Attorneys for Defendants Michael Harrington,
C. Devito, City of Syracuse, and Syracuse Police
Department

---

        [1] Defendants M&T Bank, M&T Bank Corporation, John Doyle and Philip McCoy did not file a motion to dismiss.

        [2] Plaintiff sues Defendants Harrington and Devito in their individual and official capacities.

**ONONDAGA COUNTY**                                    **KATHLEEN M. DOUGHERTY, ESQ.**
**LAW DEPARTMENT**
421 Montgomery Street
10th Floor
Syracuse, New York 13202
Attorneys for Defendants Onondaga County
and Onondaga County Sheriff Custody Booking
Division

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On March 8, 2005, Plaintiff commenced this action pursuant to 42 U.S.C. §§ 1981, 1983,

1985 and 1988.  In his complaint Plaintiff asserts that Defendants deprived him of his First, Fourth,

Fifth, Eighth, and Fourteenth Amendment rights when they allegedly restrained, arrested and

prosecuted him.  Specifically, Plaintiff alleges that Defendants' conduct constituted (1) a

deprivation of his right to due process and equal protection; (2) false arrest and imprisonment; (3)

malicious prosecution; and (4) conspiracy.

Currently before the Court are the motions of Michael Harrington, C. Devito, City of

Syracuse, and Syracuse Police Department (collectively the "City Defendants"), and Onondaga

County and Onondaga County Sheriff Custody Booking Division (collectively the "County

Defendants") to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure for failure to state a claim upon which relief can be granted.[3]

---

[3] Plaintiff asserts that Defendants City of Syracuse and County of Onondaga are liable for
defamation by libel and slander.  *See* Complaint at ¶ 12.  However, except to allege that a deputy
sheriff slandered him, Plaintiff has not provided sufficient facts to give fair notice of the claim
and the grounds upon which it rests.  *See Hall v. Dworkin*, 829 F. Supp. 1403, 1413 (N.D.N.Y.
(continued...)

## II. BACKGROUND[4]

On March 8, 2004, Plaintiff went to one of M&T Bank's ATMs to withdraw funds using a credit card. The ATM "took" his card. As a result, Plaintiff went into the bank and requested that a bank employee retrieve the card for him. A bank employee retrieved the card but refused to return the card to Plaintiff because he allegedly did not have sufficient identification to prove that the credit card belonged to him. Even after Plaintiff showed additional identification and repeatedly requested that the bank employee return the card to him, he would not do so.

The Bank called the Syracuse Police who eventually arrested Plaintiff and charged him with Criminal Trespass in the Third Degree, a misdemeanor, under New York Penal Law § 140.10; this charge was later reduced to Trespass. The Syracuse Police transported Plaintiff to the Onondaga County Justice Center where the Onondaga County Sheriff Booking Division booked and processed him. Defendants confined Plaintiff at the Justice Center until his arraignment the next day.[5]

On May 7, 2004, Plaintiff was tried on the Trespass charge in the City of Syracuse Criminal Court. After hearing all of the evidence, the judge dismissed the charges against Plaintiff. Subsequently, on March 8, 2005, Plaintiff commenced this action.

---

[3](...continued)
1993) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99. 103, 2 L. Ed. 2d 80 (1957)). In addition, Plaintiff provides no evidence that he filed a notice of claim as required under New York law. *See* N.Y. Gen. Mun. Law § 50-e (McKinney 1999). Accordingly, to the extent that Plaintiff's complaint can be read to assert such a claim, the Court *sua sponte* dismisses said claim.

[4] The facts cited in this section are based upon the allegations in Plaintiff's complaint.

[5] Although Plaintiff's complaint is unclear as to who actually confined him, it appears that, although the Syracuse City Police transported him to the Justice Center, the County confined him there. *See* Complaint at ¶ 19.

# III. DISCUSSION

## A.     Standard of Review

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "'the court must accept the material facts alleged in the complaint as true,' and afford the non-moving party all favorable inferences therefrom." *Beattie v. Farnsworth Middle Sch.,* 143 F. Supp. 2d 220, 226 (N.D.N.Y. 1998) (citing *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995)) (other citation omitted).  "A motion to dismiss should only be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harris v. McGinnis*, No. 02 Civ. 6481, 2004 WL 2187137, *2 (S.D.N.Y. Sept. 30, 2004) (quotation and other citation omitted).  Moreover, "'the Court must limit its analysis to the four corners of the complaint'" when deciding the motion.  *Chase v. Czajka,* No. 04 Civ. 8228, 2005 WL 668535, *4 (S.D.N.Y. Mar. 23, 2005) (quoting *Vassilatos v. Ceram Tech Int'l Ltd.*, 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993)) (footnote omitted).  However, "[t]he Court . . . may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference," and matters of which judicial notice may be taken.  *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (other citation omitted).

Additionally, courts are required to hold *pro se* complaints to a less stringent standard than complaints that lawyers prepare.  *See Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972) (per curiam)). "However, '[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . .'" *Chase*, 2005 WL 668535, at *5 (quoting 2 *Moore's Federal Practice* § 12.34[4][a], at 12'72.7 [sic] (2004)).  Moreover, a court should not

4

dismiss a *pro se* complaint without leave to amend "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Sullivan v. Schweikhard*, 968 F. Supp. 910, 916 (S.D.N.Y. 1997) (quotation and other citations omitted); *see also Pagburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (quotation omitted).

**B.     Whether the "Onondaga County Sheriff Custody Booking Division" is an entity subject to suit**

"Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (citations omitted); *see also Manning v. County of Westchester*, No. 93 Civ. 3366, 1995 WL 12579, *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant where the County of Westchester, the real party in interest, was already a named defendant).  A county is a municipality under New York law, *see Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2 (McKinney 1986)); and "[a] police department is an administrative arm of the municipal corporation." *Id.* (citing *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990)) (other citation omitted).  Therefore,  "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Id.* (citations omitted) (holding that the county sheriff's department was an administrative arm of the county and that the claims against the county sheriff's department were redundant of the claims against the county).

County Defendants assert that the "Onondaga County Sheriff's Custody Booking Division"

does not exist as an entity and, therefore, cannot be sued.  In response, Plaintiff claims that, even if he sued the wrong named entity, the Onondaga County Sheriff's Department had notice of the claims against it and is an entity subject to suit.

Based upon the relevant case law, the Court concludes that, because Plaintiff brought claims against the County of Onondaga, even if the "Custody Booking Division" existed or even if Plaintiff had asserted claims against the Onondaga County Sheriff's Department – which he did not – those claims would be redundant of the claims he brought against Onondaga County, which is the real party in interest.  Accordingly, the Court grants County Defendants' motion to dismiss the claims against the "Onondaga County Sheriff's Custody Booking Division."[6]

## C.     Plaintiff's § 1983 claims[7]

To state a claim under § 1983 a plaintiff must allege (1) that some person deprived him of a federal right and (2) that that person was acting under color of state law.[8]  *See  Hall v. Dworkin*, 829 F. Supp. 1403, 1409-10 (N.D.N.Y. 1993) (quoting *Gomez v. Toledo*, 446 U.S 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)).  Moreover, "'[t]o state a civil rights claim under § 1983, a complaint must contain specific allegations of facts which indicate a deprivation of constitutional

---

[6]  Although the same reasoning would apply to Defendant Syracuse Police Department, City Defendants did not raise the issue.  Nonetheless, because Plaintiff also sues the City of Syracuse, the Court *sua sponte* dismisses Plaintiff's claims against the Syracuse City Police Department.

[7] There is no dispute that M&T Bank, M&T Bank Corporation, Philip McCoy and John Doyle ("M&T Defendants") are not state actors.  Accordingly, the Court *sua sponte* dismisses Plaintiff's § 1983 claims against M&T Defendants.

[8]  There is no dispute that the County Defendants and the City Defendants were acting under color of state law.

rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983.'" *Id.* (quoting *Spear v. West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992), *cert. denied*, __ U.S. __, 113 S. Ct. 66, 121 L. Ed. 2d 33 (1992)).  In other words, a complaint under § 1983 is insufficient if it does not contain some specific allegations of fact indicating a deprivation of rights.[9]  *See id.* (quotation omitted).  Finally, personal involvement of a named defendant is a prerequisite to an award of damages in a § 1983 action.  *See McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 395 (S.D.N.Y. 2005) (citing *Wright v. Smith* 21 F.3d 496, 501 (2d Cir. 1994)).

### 1. Preliminary Matters

#### a. Plaintiff's First Amendment claim

With regard to Plaintiff's allegation that Defendants deprived him of his First Amendment right to freedom of expression, even when liberally read, Plaintiff's complaint does not allege any incidents or facts that tend to suggest that Defendants deprived him of this right.  Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's First Amendment claims.

---

[9] This is not a heightened pleading standard that requires a plaintiff to surpass the liberal pleading standard under Rule 8(a).  *See Hall*, 829 F. Supp. at 1413.  Rather, "requiring [a] plaintiff to allege more than merely bald conclusory statements comports with the notice requirements under the Federal Rules of Civil Procedure, so as to 'give the defendant fair notice of what the claim is and *the grounds upon which it rests*.'" *Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 93, 103, 2 L. Ed. 2d 80 (1957)).

### b. Plaintiff's Fifth Amendment claim

The Fifth Amendment does not regulate the activities of state officials or state actors; rather, it governs the actions of the Federal Government and federal employees. *See Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005) (quoting *Dawkins v. City of Utica*, 1997 WL 176328, *4 (N.D.N.Y. Apr. 4, 1997)). Plaintiff's complaint does not name any federal employees or agencies as Defendants. Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's Fifth Amendment claims.

### c. Plaintiff's Eighth Amendment claim

The Eighth Amendment applies only to those persons who have been convicted and not to arrestees. *See Jones v. McMahon*, No. 5:98-CV-374, 2005 WL 928667, *4 (N.D.N.Y. Mar. 28, 2005) (citation omitted). Since Plaintiff was only an arrestee, he cannot maintain an Eighth Amendment claim. Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's Eighth Amendment claim.

### d. Plaintiff's Fourteenth Amendment substantive due process claim

With regard to claims of cruel and unusual punishment, detainees are afforded at least as much protection from cruel detention conditions under the Fourteenth Amendment as convicted prisoners are afforded under the Eighth Amendment. *See Esmont v. City of N.Y.*, 371 F. Supp. 2d 202, 217 (E.D.N.Y. 2005) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)). However, substantive due process analysis is not available "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection. . .

.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S., at 395, 109

S. Ct., at 1871) (footnote omitted).  Thus,  "[c]onstitutional claims related to a plaintiff's arrest,

detention, or prosecution must be brought pursuant to the Fourth Amendment rather than the due

process clauses." *Jones*, 2005 WL 928667, at *2 (citations omitted).  Therefore, § 1983 claims

based upon malicious prosecution and false arrest, as well as constitutional claims arising out of the

arrest, detention and prosecution of a plaintiff do not state a claim under the Fourteenth

Amendment's substantive due process clause.  *See Danielak v. City of N. Y.*, No. 02-CV-2349,

2005 WL 2347095, *11 (E.D.N.Y. Sept. 26, 2005) (citing *Murphy v. Lynn*, 118 F.3d 938, 944 (2d

Cir. 1997); *Mayer v. City of New Rochelle*, No. 01Civ. 4443, 2003 WL 21222515, at *8 (S.D.N.Y.

May 27, 2003)) (other citation omitted).  Accordingly, because Plaintiff's claims arise from his

arrest, detention and prosecution, the Court grants City Defendants' and County Defendants'

motions to dismiss Plaintiff's Fourteenth Amendment substantive due process claims.


### e. Plaintiff's Fourteenth Amendment equal protection claim

"'The equal protection clause directs state actors to treat similarly situated people alike. . . .

To prove an equal protection violation, claimants must prove purposeful discrimination . . . directed

at an identifiable or suspect class.'" *Danielak*, 2005 WL 2347095, *12 (quotation omitted).  Thus, to

state an equal protection claim, a plaintiff must allege (1) that he was selectively treated in

comparison to other similarly situated people and (2) "'that such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person.'" *Bullock v. Gerould*, 338 F.

Supp. 2d 446, 449 (W.D.N.Y. 2004) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234

(2d Cir. 2004)).

Liberally read, Plaintiff's complaint alleges that Defendants arrested, maliciously prosecuted and conspired against him because of his race.  *See* Complaint at ¶¶ 32, 33, 45, 49.  Although Plaintiff alleges that the Bank employees required him, a black male, to produce more identification than white people, Plaintiff's complaint fails to allege that either City Defendants or County Defendants treated him differently than other similarly-situated people.  *See* Complaint at ¶ 15.  In addition, except for a conclusory allegation that City Defendants and County Defendants, including Defendants Devito and Harrington, treated him in the manner that they did because he is a black male, Plaintiff fails to allege any facts indicating purposeful discrimination.  Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### 2. Plaintiff's Fourth Amendment claims

The Fourth Amendment provides the source for a plaintiff's § 1983 claims based upon false arrest, false imprisonment, and malicious prosecution.  *See Danielak,* 2005 WL 2347095, at *11 (citing *Murphy v. Lynn,* 118 F.3d 938, 944 (2d Cir. 1997); *Mayer v. City of New Rochelle,* No. 01 Civ. 4443, 2003 WL 21222515, at *8 (S.D.N.Y. May 27, 2003)).

#### a. False Arrest/Imprisonment

"To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine him, (2) that plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged

or justified." *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 551 (E.D.N.Y. 2004) (citing *Savino v. City of New York*, 331 F.3d 63, 75-76 (2d Cir. 2003)).[10]

Probable cause to arrest constitutes justification; and, if it exists, it "is a complete defense to false arrest." *Id.* (citing *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir. 1999)).  Probable cause exists "'when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing the crime.'"  *Campbell v. Giuliani*, No. 99-CV-2603, 2000 WL 194815, *2 (E.D.N.Y. Feb. 16, 2000) (quoting *Weyant v. Okst*, 101 F.2d 845, 852 (2d Cir. 1996)).  A court must consider the facts available to the arresting officer at the time and any conclusions reasonably supported by them.  *See Merritt v. Dunlap*, No. 1:01 CV 1487, 2005 WL 3601645, *6 (N.D.N.Y. Dec. 30, 2005) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).  All that is needed is the mere probability of criminal activity based on the totality of the circumstances to satisfy the Fourth Amendment.  *See id.* (quotation and other citations omitted).  "The inquiry is an objective one and the subjective beliefs or motivations of the arresting officers are irrelevant."  *Id.* (citing *Whren v. United States*, 517 U.S. 806, 812-813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)) (other citation omitted).

In addition, an officer who is advised of a crime by a person who claims to be the victim and who has signed a complaint charging someone with the crime has probable cause to arrest the perpetrator absent circumstances that raise doubts about the victim's veracity.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Hebron v. Touhy*, 18 F.3d 421, 422-423 (7th

---

[10] The elements of false arrest/imprisonment under § 1983 are substantially the same as those under New York law.  *See Danielak*, 2005 WL 2347095, at *6 n.7 (citations omitted).

Cir. 1994)) (other citation omitted).  Moreover, a court may determine whether probable cause

exists as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the

arresting officers." *Brewster,* 349 F. Supp. 2d at 551 (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d

Cir. 1996).  Finally, although "where . . . an arrest or imprisonment is extrajudicial . . . ***the burden is***

***on defendant to prove justification" and therefore, probable cause***, *Mason v. Town of New Paltz*

*Police Dep't*, 103 F. Supp. 2d 562, 565 (N.D.N.Y. 2000) (emphasis added), "an arrest is justified

and a claim for false arrest must be dismissed pursuant to Rule 12(b)(6), ***if the undisputed facts in***

***plaintiff's complaint demonstrate that the arresting officers had probable cause to believe that***

***the suspect had committed a crime.***" *Brewster,* 349 F. Supp. 2d at 551 (citation omitted) (emphasis

added).

The complaint clearly indicates that Plaintiff was confined, that he was aware of the

confinement, and that he did not consent to the confinement.  *See* Complaint at ¶¶ 18-19, 37, 39.

Therefore, Plaintiff satisfies the first three elements of a false arrest claim.   With regard to the

fourth element, Plaintiff alleges that the arresting officers, Defendants Harrington and Devito,

lacked probable cause to arrest him; for example, he states  that "the arrest, seizure and confinement

of plaintiff were unlawful, without probable cause and not otherwise privileged or justified." *See id.*

at ¶ 40.  However, Plaintiff has not alleged sufficient facts regarding the reason that the police were

called or the reason that he was arrested for trespassing when he was an account holder at M&T

Bank.[11]  Moreover, Plaintiff states that Defendant Doyle, an employee of M&T Bank, filed a  false

---

[11] Plaintiff states that he was an account holder at M&T Bank but that on the day of the
alleged false arrest Defendant Doyle closed his account.

affidavit, although he does not allege what statements in the affidavit were false.[12]  *See id.* at ¶ 17.  It

is also impossible to derive from the complaint exactly what information was available to the

officers, Defendants Harrington and Devito, at the time of Plaintiff's arrest for trespassing, and

whether they had any reason to question the veracity of the complaint that M&T Bank filed with

them.  Therefore, from the complaint's "undisputed facts," the Court cannot determine whether

probable cause exists.  Although Plaintiff simply states that Defendant Officers Harrington and

Devito lacked probable cause to arrest him, Plaintiff's complaint does not demonstrate that they did

have probable cause; therefore, Plaintiff's claim should not be dismissed on that basis.

Furthermore, it is Defendants' burden to prove that they had probable cause to arrest him.

Accordingly, the Court denies City Defendant s' motion to dismiss Plaintiff's false arrest claim.[13]

---

[12] The Court considers neither Defendant Doyle's affidavit nor Defendant Harrington's report in deciding these motions because "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Cortec Indus, Inc.*, 949 F.2d at 47-48). Plaintiff mentions these documents in the fact section of his complaint, but he does not appear to rely on them in drafting the complaint.  *See* Complaint at ¶¶ 17-18.  Furthermore, the Court cannot take judicial notice of the facts contained in these documents because Plaintiff states that the affidavit is false, and a court may not take judicial notice of the truth of disputed factual matters.  *See Standish v. Woods*, No. CV 03-933-AS, 2004 WL 1379466, *3 (D. Or. May 10, 2004) (citation omitted).

[13] Although Plaintiff has not named as Defendants any individuals who worked for Onondaga County or its Sheriff's Department nor has he alleged any personal involvement on the part of any such individuals, liberally construed, Plaintiff's complaint alleges that County Defendants are responsible for his continued detention after his allegedly false arrest.  However, under New York law, County Defendants could not lawfully release Plaintiff without judicial authority.  *See* N.Y. Correct. Law § 500-c(4), (6) (McKinney 2003).  Therefore,  the Court finds and concludes that justification existed for County Defendants' continued detention of Plaintiff. Accordingly, the Court grants County Defendants' motion to dismiss Plaintiff's Fourth Amendment claim for false arrest against them.

### b. Use of Excessive Force in effecting arrest

"[T]he Second Circuit has determined that the Fourth Amendment governs claims for use of excessive force by police that arise prior to arraignment. . . ." *Quint v. Dunaj,* No. 3:02CV2053, 2006 WL 167563, *6 (D. Conn. Jan. 20, 2006) (citation omitted).  The standard that the Court applies when analyzing a claim of excessive force under the Fourth Amendment is objective, i.e., "'were the officers' actions "objectively reasonable" in light of the facts and circumstances confronting them.'" *Cox v. County of Suffolk*, 780 F. Supp. 103, 109 (E.D.N.Y. 1991) (quotation omitted).

Liberally read, Plaintiff's complaint alleges that City Defendants and County Defendants used excessive force on him when they handcuffed him and chained him.[14]  However, because most of these allegations appear to arise from Plaintiff's arrest and booking process, they, therefore, are not objectively unreasonable.  Moreover, Plaintiff does not claim that these acts injured him in any way or that he suffered any pain or discomfort.  Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's Fourth Amendment excessive force claims to the extent that they are based on his allegations that Defendants handcuffed and chained him.

### c. Strip Search

[T]he Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or

---

[14] Plaintiff also alleges that Defendants placed him in lock up to prevent a 2 p.m. arraignment; however, this allegation appears to assert a violation of his Fourth Amendment right to prompt judicial determination of probable cause without a warrant, *see  Mahase v. City of N.Y.*, No. 96 CV 6105, 2000 WL 263742, *4 (E.D.N.Y. Jan. 5, 2000) (citing *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S. Ct. 854, 868-869 (1975)), rather than a violation of his Fourth Amendment right to be free from punishment prior to adjudication of guilt.

> other minor offenses unless the officials have a reasonable suspicion
> that the arrestee is concealing weapons or other contraband based on
> the crime charged, the particular characteristics of the arrestee, and/or
> the circumstances of the arrest.

*Walsh v. Franco*, 849 F.2d 66, 68-69 (2d Cir. 1988) (quoting [*Weber v. Dell*, 804 F.2d 796,] 802 [(2d Cir. 1986)]); *see also Kaufman v. Rivera*, No. 95 Civ. 5667, 1998 WL 314744, *3 (S.D.N.Y. June 12, 1998) (stating that a reasonable inference could be drawn that the officer "had an objectively reasonable suspicion that [the] [p]laintiff [arrested for a misdemeanor] possessed weapons or other contraband so as to justify the strip search" when the "[p]laintiff's behavior at the courthouse . . . was so bizarre, irrational and belligerent, that a court officer could draw a reasonable inference that she posed a danger to others").

Moreover, "[t]he Fourth Amendment prohibits a blanket policy where all misdemeanor or minor offense arrestees are strip-searched when admitted to jail . . . ." *Loeber v. County of Albany*, 216 F. Supp. 2d 20, 23 (N.D.N.Y. 2002) (citing *Walsh v. Franco*, 849 F.2d 66 (2d Cir. 1988)).

Plaintiff's complaint alleges that Defendants strip searched him when they brought him to Onondaga County Sheriff's Department to be booked and charged with Criminal Trespass.[15]  *See* Complaint at ¶¶ 19-20, 22.   He alleges that Defendant Devito, Defendant Harrington and the Syracuse Police Department directed deputy sheriffs to strip search him.[16]  *See id.* at ¶ 19.   Although Plaintiff does not allege that an employee of Defendant County was involved, it is reasonable for the Court to infer that some County employee was involved.   Nonetheless, Plaintiff has not alleged any facts about the strip search.   He does not state whether he was searched pursuant to a blanket policy or that the officers who strip searched him lacked reasonable suspicion that he was carrying

---

[15] Under the New York Penal Code, criminal trespass is a Class B misdemeanor.  *See* N.Y. Penal Law § 140.10 (McKinney's 1999).  The charge was later reduced to simple Trespass under § 140.05, a violation.  *See id.* § 140.05; Complaint at ¶ 20.

[16] Although Plaintiff's complaint does not specifically state that City Defendants directed deputy sheriffs to strip search him, this is a reasonable inference that the Court can draw from Plaintiff's allegations.

contraband or concealing a weapon.

Nonetheless, despite these deficiencies and because Plaintiff is *pro se*, the Court conditionally denies City Defendants' and County Defendants' motions to dismiss Plaintiff's claim that they violated his Fourth Amendment right to be free from unreasonable searches to the extent that Plaintiff bases this claim on his allegation that Defendants strip searched him.  The Court will provide Plaintiff with the opportunity to amend his complaint to name or to describe the specific individuals who allegedly ordered and/or conducted the strip search and the basis for his claims that such was unreasonable.

### d. Delay in Arraignment

The Supreme Court held in *County of Riverside v. McLaughlin* that forty-eight hours is the presumptive outside limit for confinement prior to arraignment.  *See Mahase v. City of N.Y.*, No. 96 CV 6105, 2000 WL 263742, *4 (E.D.N.Y. Jan. 5, 2000) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670 (1991)).   However, "[s]horter periods of detention may also be unconstitutional if a delay in bringing the suspect before a judicial officer was 'unreasonable.'" *Id.*  For example, courts consider delays unreasonable if they are "'motivated by ill will against the arrested individual'" or if they constitute delays for delay's sake.  *Id.*

Plaintiff's complaint alleges that Sheriff Booking officers placed him in lock up to prevent a two-o'clock arraignment.  *See* Complaint at ¶ 23.  Such an allegation is conclusory in nature, and Plaintiff alleges no specific facts to support such a conclusion.  Moreover, Plaintiff has not named any deputy sheriffs as Defendants in this action.  Accordingly, the Court grants County Defendants' motion to dismiss Plaintiff's claim of a violation of his Fourth Amendment right to a prompt

arraignment.

### e. Malicious Prosecution

Although malicious prosecution is traditionally a common law tort, it also provides a basis for liability under 42 U.S.C. § 1983, and "Federal courts borrow its substantive elements from state law." *Brewster*, 349 F. Supp. 2d at 550 (citing *Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004)). Under New York law, to state a claim for malicious prosecution, a plaintiff must establish four elements: "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)) (other citation omitted). In addition, a plaintiff asserting malicious prosecution in violation of his Fourth Amendment rights "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Singer*, 63 F.3d at 117 (citing *Stachura*, 477 U.S. at 309, 106 S. Ct. at 2544).

A criminal proceeding terminates in favor of the plaintiff when there is an acquittal, or "'for these purposes, only when its final disposition is such as to indicate the innocence of the accused.'" *Campbell*, 2000 WL 194815, at *4 (quoting *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997)).[17]

---

[17] Examples of terminations that are considered "unfavorable" are dismissals for lack of subject matter jurisdiction, dismissals for failure to allege sufficient facts to support the charge, adjournments in contemplation of dismissal, and dismissals in the interest of justice. *See Campbell*, 2000 WL 194815, at *4 (citing *Murphy*, 118 F.3d at 948-49). "In contrast, the Second Circuit has held that a dismissal for lack of timely prosecution should generally be considered a favorable termination for malicious prosecution purposes." *Id.* (citing [*Murphy*, 118 F.3d] at

(continued...)

Moreover, "[a] bare allegation of dismissal, absent any explanation of the basis [for dismissal,] is insufficient to meet the favorable termination requirement." *Id.* (dismissing malicious prosecution claim for failing to allege favorable termination without prejudice to the plaintiff filing an amended complaint) (footnote omitted).

Furthermore, "a showing of probable cause to prosecute is a complete defense to a [malicious prosecution] claim." *Coyle v. Coyle*, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005) (citation omitted). "'[T]he relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced.'" *Davis v. City of N.Y.*, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005) (quoting *Mejia* [*v. City of N.Y.*], 119 F. Supp. 2d at 254) (other citation omitted). The determination as to whether probable cause exists for the prosecution is measured "as of the time the judicial proceeding is commenced (e.g., the time of the arraignment)," *id.*, and is defined as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of N.Y.*, 366 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S. 453, 455 N.E.2d 1248 (1983)) (footnote omitted). In addition, a finding of probable cause to support an arrest defeats a malicious prosecution claim "'unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause.'" *Coyle*, 354 F. Supp. 2d at 213 (quotation omitted).

With respect to malice, New York does not require actual spite or hatred; rather, "'"the defendant must have commenced the criminal proceeding due to a wrong or improper motive,

_____

[17](...continued)
950).

18

something other than a desire to see the ends of justice served."'" *Davis*, 373 F. Supp. 2d at 335

(quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).  Malice can be inferred

from lack of probable cause because "'it tends to show that the accuser did not believe in the guilt of

the accused . . . .'"  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting

*Conkey v. State*, 74 A.D.2d 998, 999, 427 N.Y.S.2d 330, 332 (4th Dep't 1980)).

### *(1) Defendant Officers Harrington and Devito*

Plaintiff clearly alleges that Defendant Officers Harrington and Devito initiated a criminal

prosecution against him.  *See* Complaint at ¶¶ 14, 25.  Additionally, Plaintiff asserts that the judge in

the City Criminal Court dismissed the charges and terminated the proceeding in his favor.  *See id.* at

¶ 26.  However, this allegation is insufficient to establish a "favorable termination" because it does

not provide an explanation for the basis of the termination.  Plaintiff also does not allege any

specific facts indicating that Defendants lacked reason to believe a prosecution would be successful.

Moreover,  Plaintiff's allegation that "[t]he actions of each of the defendants in initiating,

instigating, inducing and encouraging this prosecution constituted malicious, reckless disregard and

depraved indifference for the rights and liberties of the plaintiff and were intended to injure and

harm the plaintiff," *see* Complaint at ¶ 44, is insufficient to establish that Defendants acted with

malice.  Similarly, his allegation that Defendants commenced a criminal prosecution against him

because he is an African American is conclusory and unsupported by any specific facts.  Finally,

Plaintiff has not alleged a post-arraignment deprivation of liberty which is an essential element of

his malicious prosecution claim.[18]  Nonetheless, despite these deficiencies and because Plaintiff is *pro se*, the Court conditionally denies City Defendant s' motion to dismiss Plaintiff's malicious prosecution claim and will afford Plaintiff the opportunity to amend his complaint to correct these identified deficiencies in his malicious prosecution claim.

### *(2) County Defendants*

Plaintiff's complaint alleges that *each* Defendant instigated and initiated the prosecution. *See* Complaint at ¶ 44.  However, unlike Plaintiff's complaint against City Defendants where he names the specific individuals who initiated a criminal proceeding against him, Plaintiff has not alleged any facts indicating that any individual in Defendant Onondaga County or Onondaga County Sheriff's Custody Booking Division either initiated or participated in the prosecution against him. Accordingly, the Court grants County Defendants' motion to dismiss Plaintiff's malicious prosecution claim against them.

---

[18]  However, although Plaintiff does not specifically state a post-arraignment deprivation of liberty, the Court could reasonably infer from the Complaint that, even if Plaintiff did not await trial in jail, the fact that he had to show up for trial indicates that there was some post-arraignment deprivation of liberty.  *See* Complaint at ¶¶ 24-25.  In *Murphy v.Lynn*, the Second Circuit stated that "while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside the state as a condition of his pre-trial release, *and may order him to make periodic court appearances*, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment."  *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (summing up the concurring opinions of the Supreme Court Justices in *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), and quoting Justice Ginsberg's observation that a defendant released pretrial "*is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges.* He is equally bound to appear, and is hence "seized" for trial, when the state employs the less strong-arm means of summons in lieu of arrest to secure his presence in court").

### 3. *Municipal Liability* [19, 20, 21]

"In order to hold a municipality liable under § 1983 for the conduct of employees below the policymaking level, a plaintiff 'must show that the violation of his constitutional rights resulted from a municipal custom or policy.'" *Dwares v. City of N. Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 122 (2d Cir. 1991); *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 1037, 56 L. Ed. 2d 611 (1978); *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989)).

---

[19] In order for an individual to be liable in his official capacity under § 1983, the liability of the government agency must be established under *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658 (1978). *See Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (citing *Kentucky v. Graham*, 473 U.S. at 166 n.14 105 S. Ct. at 3106 n.14). Therefore, the real party in interest in an official capacity suit is the governmental entity and not the named official. *See id.* As a result, district courts have dismissed official capacity claims against individual defendants as redundant or unnecessary where the plaintiff has asserted claims under § 1983 against the entity as well. *See id.* Since Plaintiff asserts § 1983 claims against the City of Syracuse, the Court dismisses Plaintiff's official capacity claims against Defendant Officers Devito and Harrington as redundant.

[20] County Defendants contend that the Court should dismiss Plaintiff's complaint against them because they are entitled to qualified immunity. *See* County Defendants' Mem. at 11. However, the doctrine of qualified immunity does not apply to municipalities. *See Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 74 (2d Cir. 1992) (following *Owen v. Independence*, 445 U.S. 622 (1980) (holding that municipalities could not assert a defense of qualified immunity)). Rather, it applies only to individuals sued in their individual capacity. *See id.* at 73 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105-06, 87 L. Ed. 2d 114 (1985)). Therefore, Defendant County is not entitled to rely upon the defense of qualified immunity. Accordingly, the Court denies County Defendants' motion to dismiss insofar as it is based upon the doctrine of qualified immunity.

[21] As a preliminary matter, a plaintiff cannot hold a municipality liable for alleged violations of his constitutional rights unless he demonstrates that the individual defendants violated his rights. *See Fisher v. City of N.Y.*, No. 90 Civ. 8163, 1992 WL 77606, *2 (S.D.N.Y. Mar. 23, 1992) (citing *Monell,* 98 S. Ct. at 2036). In addition, a municipality may not be held liable for the actions of its employees on the theory of respondeat superior in a suit for municipal liability under § 1983. *See Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000) (citing *Monell v. Department of Social Services*, 436 U.S. at 694, 98 S. Ct. 2018).

Thus, a municipality cannot be held liable in a § 1983 action unless the "actions complained of . . . were taken or caused by an official whose actions represent official policy . . . ." *Jeffes*, 208 F.3d at 57 (citations omitted).  In other words, "'[o]nly those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.'"  *Id.* (quoting [*Praprotnik*, 485 U.S.] at 123, 108 S. Ct. 915).

A court may draw the inference of the existence of a policy or custom "when a plaintiff presents evidence that a "'municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction. . . .'"" *Griffin-Nolan v. Providence Washington Ins. Co.,* No 504-CV-1453, 2005 WL 1460424, *3 (N.D.N.Y. June 20, 2005) (quotation omitted).   Similarly, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct . . . ." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Turpin v. Mailet*, 619 F.2d 196, 201, 202 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S. Ct. 577, 66 L. Ed. 2d 475 (1982)) (other citations omitted).  However, in *Leatherman v. Tarrant*, 507 U.S. 163 (1993), the Supreme Court rejected the contention that a plaintiff must do more than plead a single incident to state a claim for municipal liability; therefore, there is no heightened pleading standard for § 1983 claims against municipalities.  *See Griffin-Nolan*, 2005 WL 1460424, at *3 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-168 (1993)).

### a. Defendant City of Syracuse

Plaintiff alleges constitutional violations of his Fourth Amendment rights based upon City

Defendants' arrest, detention and prosecution of him.  A liberal construction of Plaintiff's complaint reveals allegations that Defendant City has a practice of condoning the arrest, prosecution and violation of the civil rights of innocent black males by failing to properly train, discipline, restrict and control employees known to be irresponsible in their actions toward African-Americans.  *See* Complaint ¶¶ 12, 28(a).  Furthermore, Plaintiff alleges that this policy encourages City and County officers "to believe that they can arrest and violate the rights of innocent black males, such as plaintiff, with impunity."  *See id.*  Moreover, a liberal reading of the complaint allows the Court to draw a reasonable inference that Plaintiff is claiming that Defendant City knew that Defendants Harrington and Devito had previously acted "irresponsibly" toward African-American citizens of the community and that Defendant City failed to train and discipline them.  *See id.* at ¶ 28(a).  According to Plaintiff, this failure resulted in his illegal arrest and prosecution and is sufficient to allege a causal connection between the alleged policy and the constitutional injury.[22]  *See id.*  However, Plaintiff has failed to allege a final policy-maker who by his actions would subject Defendant City to municipal liability.  Therefore, the Court grants City Defendants' motion to dismiss Plaintiff's § 1983 municipal liability claim against Defendant City of Syracuse.

_____

[22] Plaintiff also alleges that Defendant City and Defendant County had a policy of failing to take adequate precautions in the hiring and retention of police personnel, failing to forward to the District Attorney's Office evidence of police officers' criminal acts and civil rights deprivations, and failing to establish a meaningful way to address complaints of police misconduct.  However, Plaintiff does not allege, and the Court cannot reasonably infer, that the application of any of these alleged policies caused his injury.  *See* Complaint at ¶ 28 (b)-(d).

### b. Defendant County of Onondaga[23]

Plaintiff alleges the same policy or custom against Defendant Onondaga County as he does against Defendant City of Syracuse.  *See* Complaint at ¶¶ 12, 28(a).  However, Plaintiff's complaint fails to allege any individual defendants who violated his rights or any officials who can be said to have "final policy-making authority" in order to subject Defendant County to municipal liability. Therefore, the Court grants County Defendant s' motion to dismiss Plaintiff's claims of § 1983 municipal liability against Defendant Onondaga County.

**D.    Plaintiff's § 1981 claims**

Section 1981 provides no broader a remedy against a state actor than a suit brought under § 1983.  *See Booker*, 238 F. Supp. 2d at 475 (citing *Pearson v. Macon-Bibb County Hospital Authority*, 952 F.2d 1274, 1278 n.3 (11th Cir. 1992)).  Therefore, where a plaintiff brings an action under § 1983 and § 1981 and the defendants are state actors, the claims merge;[24] and "[t]he § 1981

---

[23] Although County Defendants do not directly assert that Plaintiff does not state a claim for municipal liability, in "Point II" of their Memorandum of Law they assert a position, which, in essence, is that Plaintiff does not state such a claim.

[24] Even if the § 1981 claim and § 1983 claim did not merge,  Plaintiff's claim under § 1981 would fail because he does not allege purposeful discrimination based upon his race.  To establish a claim under § 1981, a plaintiff must allege facts showing three elements: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff based upon his race and (3) that the defendant discriminated against him in connection with one of the enumerated activities listed in the statute.  *See Evans-Gadsden v. Bernstein Litowitz Berger*, 332 F. Supp. 2d 592, 595-96 (S.D.N.Y. 2004) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000), *cert. denied*, 534 U.S. 816 (2001)).  With respect to the second element, in order to survive a motion to dismiss "a plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'"  *Id.* (quoting *Yusuf v. Vassar College*, 827 F. Supp. 952 (S.D.N.Y. 1993), aff'd, 35 F.3d 709, 713 (2d Cir. 1994)).  Plaintiff has not

(continued...)

claim is treated exactly like the § 1983 claim, because it is merged into it and is considered as a single claim." *Id.*; *see also Richards v. N.Y. City Police Dep't,* No. 97 Civ. 0179, 1999 WL 33288, *18 n.7 (S.D.N.Y. Jan. 25, 1999) (citations omitted) (stating that "lower courts within this Circuit have found that plaintiffs alleging municipal liability for employee violations of Section 1981 still must show that the employee conduct implicated a governmental policy or custom" (citations omitted).[25]

In this case, City Defendants and County Defendants are state actors.  Therefore, Plaintiff's § 1981 claims merge into his § 1983 claims.    Accordingly, the Court holds that Plaintiff's § 1981 and § 1983 claims merge and that Plaintiff's § 1981 claims do not require an analysis independent of the one that the Court undertakes with respect to his § 1983 claims.

**E.      Plaintiff's § 1983 conspiracy claims**

Courts hold claims alleging conspiracies to violate civil rights to a higher pleading standard, and, thus, a detailed fact pleading is required for such claims to survive a motion to dismiss.  *See*

---

[24](...continued)
specifically alleged events indicating purposeful discrimination, nor has he specifically alleged circumstances giving rise to a plausible inference of discriminatory intent.  At most, Plaintiff's complaint contains conclusory allegations that Defendants took the actions against him because he is a black male.  *See* Complaint at ¶¶ 45, 49.

[25] In *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989), the Supreme Court held that municipal actors were not subject to liability under 42 U.S.C. § 1981 and that the exclusive remedy against municipalities for violations of § 1981 was found in § 1983.  *See Booker,* 238 F. Supp. 2d at 475 (citing [*Jett,* 491 U.S.] at 732, 109 S. Ct. at 2721).  However, in 1991, Congress amended § 1981 to include a provision that provided that "'[t]he rights protected by [§ 1981] are protected against impairment by non-governmental discrimination and impairment under color of State Law.'"  *Id.* (quoting 42 U.S.C. § 1981(c))*.*  Therefore, a plaintiff can bring a suit against a municipality for violations of § 1981 under either § 1981 or § 1983.  *See id.*

*Brewster*, 349 F. Supp. 2d at 547 (citing *Julian v. New York City Transit Auth.*, 857 F. Supp. 242, 252 (E.D.N.Y. 1994); *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)).

To prove a claim of conspiracy under § 1983, a plaintiff must show (1) that an agreement existed between two or more state actors or a state actor and a private entity, (2) that the actors agreed to act in concert to inflict unconstitutional injuries, and (3) that the actors committed an overt act in furtherance of their goal causing damages. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). In addition, although recognizing that conspiracies are secretive operations that a plaintiff may have to prove by circumstantial evidence, the Second Circuit has stated that conclusory allegations of conspiracy are insufficient to state a claim under § 1983. *See id.* (citing *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)). Moreover, "[i]t is uniformly recognized . . . that a private party does not conspire or jointly act with a state actor simply by complaining to the police." *D'Agostino v. N.Y. State Liquor Auth.*, 913 F. Supp. 757, 770 (S.D.N.Y. 1996) (citations omitted). Furthermore, "'providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983.'" *Id.* (quoting *Moore v. Marketplace Rest., Inc.,* 754 F.2d 1336, 1352 (7th Cir. 1985)).

In addition, "'[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together.'"[26] *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004) (quoting *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999)) (other citations omitted);

---

[26] The intra-corporate conspiracy doctrine applies to both § 1983 conspiracy claims and § 1985 conspiracy claims. *See Nassau County Employee "L,"* 345 F. Supp. 2d at 303-04 (§ 1983 conspiracy claim); *Monte v. Ernst & Young LLP*, 330 F. Supp. 2d 350, 366 (S.D.N.Y. 2004) (citation omitted) (§ 1985 conspiracy claim).

*see also Danielak*, 2005 WL 2347095, at *13 (quoting *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002)) (other citation omitted).   This doctrine applies when the officers and employees are alleged to have been acting within the scope of their employment. *See Nassau County Employee "L,"* 345 F. Supp. 2d at 304 (quotation omitted).  An exception applies, however, where a plaintiff  alleges that the defendant "'possessed an independent, personal conspiratorial purpose'" completely separate from the entity; however, personal bias or prejudice is insufficient to support an application of this exception. *See Danielak*,  2005 WL 2347095, at * 13 (citing *Salgado v. City of New York,* 00 Civ. 3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001)) (other citation omitted).

In this case, Plaintiff does not allege a conspiracy between a state actor and a private entity under § 1983 because a civilian does not conspire or jointly act with the police simply by filing a complaint with them.[27]  Moreover, Plaintiff has not alleged a conspiracy between state actors because he fails to allege individual County Defendants with whom Defendant Harrington and Defendant Devito could have conspired to violate Plaintiff's constitutional rights.  In addition,  the intra-corporate conspiracy doctrine bars any claim Plaintiff has of a conspiracy between Defendant Harrington and Defendant Devito because both are officers of the Syracuse Police Department.  Moreover, the exception based upon an independent, personal conspiratorial purpose does not apply because Plaintiff has not alleged that any of the individual Defendants had such purpose.

---

[27]  As noted, although M&T Defendants Doyle and McCoy are not state actors, Plaintiff can hold them liable under § 1983 if he can show that they conspired with state actors.  Plaintiff only alleges that M&T Defendants filed a complaint against him.  Since a private party does not conspire with a state actor simply by filing a complaint, Plaintiff has not stated a cause of action for conspiracy against M&T Defendants.  Accordingly, the Court *sua sponte* dismisses Plaintiff's § 1983 conspiracy claims against M&T Defendants Doyle and McCoy.

Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's § 1983 conspiracy claims.

**F.      Plaintiff's § 1985 conspiracy claims**

Unlike a § 1983 conspiracy claim, a conspiracy claim under § 1985 does not require state action.  *See Ramirez v. Brooklyn Aids Task Force*, 175 F.R.D. 423, 429 (E.D.N.Y. 1997).  To state a claim of conspiracy under § 1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States."  *Mian*, 7 F.3d at 1087 (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)).  "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'"  *Id.* at 1088 (quotation omitted).  Moreover, the mere assertion of racial motivation . . . is not sufficient to state a conspiracy claim;" rather the plaintiff must allege sufficient facts to support a conclusion of racial animus.  *See Poser v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999) (citing *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996)) (stating that the plaintiff did not allege facts sufficient to support a conclusion of racial animus when "[h]e did not allege, for example, that the court officers who arrested him made any verbal references to his race or that they improperly treated other African-Americans in ways similar to that in which they treated him").

In this case, Plaintiff has not alleged a conspiracy either between County Defendants and

City Defendants because he has not named any individual County Defendants with whom City Defendants could conspire or between Defendant Harrington and Defendant Devito because the intra-corporate conspiracy doctrine applies.[28]  Moreover, Plaintiff fails to allege facts sufficient to support a conclusion that Defendants conspired against him because of racial animus.  Although Plaintiff asserts that Defendants conspired against him because he is a black male, this assertion alone is insufficient to support a conspiracy claim under § 1985, and like the plaintiff in *Posr*, Plaintiff has failed to allege that Defendants made any verbal references to his race or that they mistreated other black males in a similar fashion.  Accordingly, the Court grants City Defendants' and County Defendants' motions to dismiss Plaintiff's § 1985 conspiracy claims.

## G.    Qualified Immunity

Qualified immunity shields police officers from a suit for damages under § 1983 for acts undertaken in the course of their duties "'unless their actions violate clearly-established rights of which an objectively reasonable [police officer] would have known.'"  *Thompson v. Sweet*, 194 F. Supp. 2d 97, 102 (N.D.N.Y. 2002) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)) (other citation omitted).  To establish entitlement to such a defense, the defendants must show that their actions did not clearly violate plaintiff's rights or that it was objectively reasonable for them to believe that their actions did not violate such rights.  *See Feliciano v. County of Suffolk*, No. 04-CV-

---

[28]  Although the M&T Bank Defendants are not state actors, Plaintiff can hold them liable under § 1985, which does not require state actors.  However, Plaintiff fails to state that a conspiracy exists under § 1985 because he has not alleged that any joint participation or conspiracy exists between M&T Defendants and City Defendants or M&T Defendants and County Defendants.  Furthermore, M&T Defendants cannot conspire with each other because the intra-corporate conspiracy doctrine applies.  Accordingly, the Court *sua sponte* dismisses Plaintiff's § 1985 conspiracy claim against M&T Defendants.

5321, 2005 WL 2367757, *10 (E.D.N.Y. Sept. 27, 2005) (citing *Salim v. Proulix*, 93 F.3d 86, 89 (2d Cir. 1996)).  "'The objective reasonableness test is met . . . if "officers of reasonable competence could disagree" on the legality of the defendant's actions.'"  *Thompson*, 194 F. Supp. 2d at 103 (quoting *Thomas,* 165 F.3d at 143) (holding that "due to the significant disparities in the facts alleged by both sides, and the fact that the facts must be viewed in a light most favorable to the plaintiff, [the defendant] is not entitled to qualified immunity as a matter of law").  However,  when a defendant advances a qualified immunity defense on a 12(b)(6) motion, "'[the defense] faces a "formidable hurdle"'" due to the early stage of the proceedings, *Feliciano*, 2005 WL 2367757, at * 10 (quoting *The Cathedral Church of the Intercessor v. The Incorporated Village of Malverne*, 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005)); furthermore, the defense must be based upon facts appearing on the face of the complaint, *see McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004) (citation omitted).  Moreover, as with all Rule 12(b)(6) motions, the court can only grant the motion if  "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  *Id*. at 436 (quotations omitted).  Thus, the court must draw all reasonable inferences from the facts, including those that defeat the defense of qualified immunity.  *See id.*

Plaintiff has alleged violations of clearly established constitutional rights,[29] and the parties do not dispute that these rights are clearly established.  *See* Complaint at ¶¶ 17-18, 25, 40, 42. Therefore, the appropriate inquiry at this juncture is whether it was objectively reasonable for

---

[29] "'The right not to be arrested without probable cause is a clearly established right.'" *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002) (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)).  The Fourth Amendment right to be free from malicious prosecution is also a clearly established right.  *See Cipolla v. County of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001).

Defendants Harrington and Devito to believe that probable cause existed to arrest Plaintiff and whether it was objectively reasonable to prosecute Plaintiff.

In his complaint Plaintiff alleges that he held an account at M&T Bank, that he offered identification to prove his identity, that he withdrew funds by check while at the bank,[30] and that he provided additional identification after his arrest.  *See* Complaint at ¶¶ 14, 17.[31]  From these facts the Court could reasonably infer that Plaintiff was privileged to be on the bank premises.  The complaint also alleges that Defendant Doyle filed a false complaint with Defendant Harrington and Defendant Devito.  *See id.* at ¶ 17.  Although Plaintiff does not assert a reason for Defendant Devito and Defendant Harrington to doubt Defendant Doyle's veracity, it is reasonable for the Court to infer from the facts alleged in the complaint that Plaintiff performed at least some of the above acts in front of Defendant Harrington and Defendant Devito and that, therefore, they might have had some independent knowledge of the events that occurred prior to Plaintiff's arrest and, thus, reason to question the veracity of Defendant Doyle.  Moreover, because Plaintiff's complaint alleges that he presented identification after Defendant Harrington and Defendant Devito arrested him for trespass, the Court cannot say that Plaintiff would be unable to prove any set of facts showing that Defendants lacked probable cause to prosecute him.  *See id.* at ¶¶ 17, 18.  It is also possible that Plaintiff could prove that it was objectively unreasonable for Defendants to arrest him; however, at this juncture, the complaint provides insufficient facts to make a determination regarding this issue.

---

[30] It is reasonable for the Court to infer from the complaint that the identification that Plaintiff provided to Defendant Harrington and Defendant Devito was sufficient to prove that he was who he claimed to be.  *See* Complaint at ¶ 17.

[31] Although City Defendants support their motion with facts that directly contradict Plaintiff's account of the events, the Court can only consider the facts alleged on the face of the complaint for purposes of this motion.

Therefore, the Court concludes that Defendants Harrington and Devito are not entitled to qualified immunity at this stage in the proceedings.  Accordingly, the Court denies City Defendants' motion to dismiss Plaintiff's claims against Defendant Officers Harrington and Devito on the basis of qualified immunity with leave to renew.


## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that County Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **GRANTED** with respect to Plaintiff's claims against Onondaga County Sheriff's Custody Booking Department; and the Court further

**ORDERS** that Plaintiff's claims against Defendant Syracuse City Police Department are **DISMISSED** *sua sponte*; and the Court further

**ORDERS** that Plaintiff's claims against Defendant Officers Harrington and Devito in their official capacity are **DISMISSED**; and the Court further

**ORDERS** that Plaintiffs § 1981 claims against City Defendants and County Defendants are **DISMISSED** as redundant of his § 1983 claims; and the Court further

**ORDERS** that all of Plaintiff's claims against M&T Defendants are **DISMISSED** *sua sponte*; and the Court further

**ORDERS** that County Defendants' and City Defendants' motions to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, are **GRANTED** with respect to Plaintiff's

(1) First, Fifth, Eighth and Fourteenth Amendment claims;

(2) § 1983 municipal liability claims;

(3) § 1983 conspiracy claims;

(4) § 1985 conspiracy claims;

(5) Fourth Amendment excessive force claim; and the Court further

**ORDERS** that County Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **GRANTED** with respect to Plaintiff's

(1) Fourth Amendment false arrest claim;

(2) Fourth Amendment right to prompt arraignment claim;

(3) Fourth Amendment malicious prosecution claim; and the Court further

**ORDERS** that City Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **DENIED** with respect to Plaintiff's Fourth Amendment false arrest claim against Defendant Officers Harrington and Devito; and the Court further

**ORDERS** that City Defendants' motion to dismiss Plaintiff's claims against Defendant Harrington and Defendant Devito on the ground that they are entitled to qualified immunity is **DENIED**; and the Court further

**ORDERS** that County Defendants' and City Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **CONDITIONALLY DENIED**, with respect to Plaintiff's Fourth Amendment claims based upon an illegal strip search; and the Court further

**ORDERS** that City Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **CONDITIONALLY DENIED** with respect to Plaintiff's Fourth Amendment malicious prosecution claim; and the Court further

33

**ORDERS** that Plaintiff may file an amended complaint with the Court **within thirty (30) days from the date of this Order** consistent with the terms of this Order to cure the deficiencies in his Fourth Amendment false arrest, malicious prosecution and illegal strip search claims against Defendants Harrington and Devito in their individual capacity, as well as his illegal strip search claim against Defendant County, naming or describing individual defendants who work for Defendant County who either performed or oversaw the strip search. Any such amended complaint, **which shall supercede and replace in its entirety the previous complaint that Plaintiff filed**, must contain a caption that clearly identifies, by name, each individual that Plaintiff is suing in the present lawsuit and must bear the case number assigned to this action.[32]

In addition, the body of Plaintiff's amended complaint must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph.** Thus, if Plaintiff claims that more than one Defendant violated his civil and/or constitutional rights or that Defendants violated his civil and/or constitutional rights on more than one occasion, he shall include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (1) the alleged act of misconduct; (2) the date on which such conduct occurred; (3) the names of each and every Defendant who participated in such conduct; (4) where appropriate, the location where the misconduct occurred; and (5) the nexus between such conduct and Plaintiff's civil and/or constitutional rights. Moreover, Plaintiff shall state in the single amended complaint filed in accordance with the terms of this Order all claims against each and every Defendant whom he names in such amended complaint that he wishes the Court to consider as a basis for awarding

---

[32] If Plaintiff fails to file an amended complaint that meets these minimal legal requirements, the Court will dismiss this claim.

34

him the relief he seeks herein.  **The Court will dismiss any Defendant against whom Plaintiff does not allege specific instances of wrongdoing in the body of the complaint**.  Finally, Plaintiff's amended complaint shall **not** contain any of the claims or name any Defendants that the Court has dismissed as a result of this Order;[33] and the Court further

ORDERS that, if Plaintiff does not file an amended complaint **within thirty (30) days from the date of this Order**, his malicious prosecution and illegal strip search claims will be dismissed without further Order of the Court; and the Court further

ORDERS that, upon the filing of Plaintiff's amended complaint, the Clerk of the Court shall return the file to the Court for further review.


**IT IS SO ORDERED.**


Dated: March 27, 2006
      Syracuse, New York


_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[33] As a result of this Order, in his amended complaint Plaintiff may only assert Fourth Amendment claims for illegal strip search, false arrest and malicious prosecution against Defendant Officers Harrington and Devito in their individual capacity and a Fourth Amendment claim for illegal strip search against individual Defendants who work for County Defendant and participated in or oversaw the strip search.  The Court notes that, if Plaintiff fails to file an amended complaint within thirty (30) days from the date of this Order, only Plaintiff's Fourth Amendment false arrest claim will remain to be tried in this action.