UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

J. CAIDOR,

                        Plaintiff,

v.                                               5:05-CV-0297
                                               (GTS/GJD)

MICHAEL HARRINGTON; and C. DEVITO,

                        Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

J. CAIDOR
  Plaintiff, *Pro Se*
206 Merriman Avenue
Syracuse, NY 13204

HON. RORY A. McMAHON                     JOSEPH FRANCIS BERGH, ESQ.
Corporation Counsel for the City of Syracuse     Assistant Corporation Counsel
  Counsel for Defendants
233 East Washington Street, Room 301
City Hall
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

       Currently before the Court in this *pro se* civil rights action filed by Junet Jean Caidor ("Plaintiff") is a motion for summary judgment filed by Syracuse City Police Officers Michael Harrington and Christopher Devito ("Defendants"). (Dkt. No. 49.) In their motion, Defendants request the dismissal of Plaintiff's claims against them, specifically, his Fourth Amendment claims of false arrest, unlawful strip search, and malicious prosecution. (*Id*.) For the reasons set forth below, Defendants' motion is granted and Plaintiff's Complaint is dismissed.

I.  **PROCEDURAL HISTORY**

Plaintiff filed his Complaint in this action on March 8, 2005. (Dkt. No. 1.) Generally, his Complaint asserted claims arising under the First, Fourth, Fifth, Eighth and Fourteenth Amendments, against eleven (11) persons, corporations and entities, based on his arrest and prosecution for the violation of trespass (under N.Y. Penal Law § 140.05) at M&T Bank in the spring of 2004. (*Id.*) The majority of those claims were dismissed on March 27, 2006, and March 14, 2007, by Senior District Judge Frederick J. Scullin, Jr. (at the time the district judge presiding over the action). *See Caidor v. M&T Bank*, 05-CV-0297, 2006 WL 839547, at *14-15 & n.33 (N.D.N.Y. March 27, 2006) (Scullin, J.); *Caidor v. M&T Bank*, 05-CV-0297, Memorandum-Decision and Order, at 2, 8 (N.D.N.Y. filed March 14, 2007) (Scullin, J.). Remaining after Judge Scullin's Orders of Dismissal were Plaintiff's Fourth Amendment claims of false arrest, unlawful strip search, and malicious prosecution against Defendants. *See Caidor v. M&T Bank*, 05-CV-0297, Memorandum-Decision and Order, at 8 & n.3 (N.D.N.Y. filed March 14, 2007) (Scullin, J.). Defendants' current motion for summary judgment requests the dismissal of each of those remaining claims. (Dkt. No. 49.)

II.  **LEGAL STANDARD**

For the sake of brevity, the Court will not repeat the well-known legal standard governing motions for summary judgment pursuant to Fed. R. Civ. P. 56, but will refer the parties to its decision in *Proctor v. Kelly*, 05-CV-0692, 2008 WL 5243925, at *3-4 (N.D.N.Y. Dec. 16, 2008) (Suddaby, J.).

**III.   ANALYSIS**

    **A.   False Arrest Claim**

"To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine him, (2) that plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified." *Caidor v. M&T Bank*, 05-CV-0297, 2006 WL 839547, at *4 (N.D.N.Y. March 27, 2006) (Scullin, J.) [internal quotation marks and citations omitted]. "Probable cause to arrest constitutes justification; and, if it exists, it is a complete defense to false arrest." *Caidor*, 2006 WL 839547, at *4 [internal quotation marks and citations omitted]. "Probable cause exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing the crime." *Id.* [internal quotation marks and citations omitted]. "All that is needed is the mere probability of criminal activity based on the totality of the circumstances to satisfy the Fourth Amendment." *Id.* [citation omitted].

Although Plaintiff alleges in his Complaint that Defendants initially arrested him for criminal trespass in the third degree (under N.Y. Penal Law § 140.10), he correctly concedes in his memorandum of law that the appropriate charge to be analyzed (in order to determine whether probable cause existed for his arrest) is trespass (under N.Y. Penal Law § 140.05). (*Compare* Dkt. No. 1, ¶ 20 [Plf.'s Compl.] *with* Dkt. No. 52, Part 3, at 5 [Plf.'s Opp. Memo. of

Law].)[1]  As a result, the issue presented by Defendants' motion (with regard to Plaintiff's false arrest claim) is whether Defendants have met their burden of showing that, based on the current record, no rational fact-finder could conclude that Defendants lacked probable cause to arrest Plaintiff for the violation of trespass (under N.Y. Penal Law § 140.05) at the South Warren Street branch of M&T Bank on March 8, 2004.[2]  "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05.

In their Rule 7.1 Statement, Defendants assert numerous facts that they support with accurate record citations.  (*See generally* Dkt. No. 49, Part 15.)  While Plaintiff denies some of these facts (and admits others) in his Rule 7.1 Response, he does not support any of the denials with accurate record citations, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.  (*See generally* Dkt. No. 52, Part 4.)  As a result, those facts are deemed "admitted."  N.D.N.Y. L.R. 7.1(a)(3).  While Defendants' "Local Rule 56.2 Notice" to Plaintiff (of the consequences of failing to respond properly to their summary judgment motion) may leave something to be desired in terms of specificity (*see* Dkt. No. 49, Part 2), the Court notes

---

[1]  (*See also* Dkt. No. 52, Part 3, at 17 [Plf.'s Opp. Memo. of Law, arguing, "Plaintiff was arrested for [a] simple trespass violation under NY Penal Law [§] 140.05"].)

[2]  In her decision of May 17, 2004, Syracuse City Court Judge Kate Rosenthal indicated that Defendants may have had probable cause to arrest Plaintiff for the violation of disorderly conduct under N.Y. Penal Law § 240.20. (Dkt. No. 49, Part 10, at 5 [Ex. G to Bergh Decl., attaching page "122" of hearing transcript].)  "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e engages in . . . threatening behavior . . . ." N.Y. Penal Law § 240.20.  If Judge Rosenthal were correct, the existence of such probable cause would bar Plaintiff's false arrest claim.  *See Dawkins v. Williams*, 511 F. Supp.2d 248, 271-74 (N.D.N.Y. 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J., in pertinent part).  However, the Court need not, and does not, decide whether probable cause existed to arrest Plaintiff for disorderly conduct at the South Warren Street branch of M&T Bank on March 8, 2004.

that, by the time that Plaintiff responded to Defendants' motion on June 12, 2008, he had *repeatedly* received detailed notice of the consequences of failing to properly oppose a summary judgment motion, including the consequences of failing to properly oppose a Rule 7.1 Statement. *See*, *e.g.*, *Caidor v. Berg*, 03-CV-1163, Defendant's Local Rule 56.2 Notice to Plaintiff, at 1-11 (N.D.N.Y. filed Apr. 5, 2007) (containing three pages of warnings and attaching a complete copy of both Local Rule 7.1 and Fed. R. Civ. P. 56); *Caidor v. Onondaga County*, 03-CV-0031, Defendant's Notice to Plaintiff, at 2 (N.D.N.Y. filed Oct. 28, 2004) (containing page of warnings); *Caidor v. Chase Manhattan Bank Plan Administrator*, 98-CV-5018, Defendants' Rule 56 Notices to Plaintiff (S.D.N.Y. filed May 28, 1999, and May 1, 2000);*Caidor v. Chase Manhattan Bank, NA*, 97-CV-0227, Court's Notice to Plaintiff (S.D.N.Y. filed Apr. 30, 1997) (containing warnings); *see also* N.D.N.Y. L.R. 7.1(a)(3) [containing notice of consequences]; United States District Court for the Northern District of New York *Pro Se* Handbook, at 16, 41, http://www.nynd.uscourts.gov/documents/ProSeHandbook2008.pdf (containing notice of consequences).[3] For these reasons, the Court concludes that Plaintiff (who is proceeding *pro se*

---

[3] In addition, it is worth noting that a review of the Federal Judiciary's Public Access to Court Electronics Records Service reveals that, as of on June 12, 2008, Plaintiff was an experienced civil rights litigant, having filed *at least* nine (9) other civil rights actions in the Northern, Southern and Eastern Districts of New York–most of them *pro se* and several of them resulting in settlements. *See*, *e.g.*, *Caidor v. The Hartford*, 02-CV-0691, Stipulation and Order of Dismissal Due to Settlement (N.D.N.Y. filed Nov. 12, 2002) (Peebles, M.J.); *Caidor v. Chase Manhattan Bank, NA*, 97-CV-0227, Stipulation and Order of Dismissal Due to Settlement (S.D.N.Y. filed Nov. 10, 1998); *see also Caidor v. Bell Atlantic Mobile*, 99-CV-5024, Stipulation and Order of Dismissal (E.D.N.Y. filed Apr. 20, 2000). The Court says that Plaintiff has filed "at least" nine (9) such actions because, in 1997, the Southern District of New York noted that Plaintiff had previously filed fourteenth litigations against Chase Manhattan Bank. *Caidor v. Chase Manhattan Bank*, 97-CV-0227, 1997 WL 266985, at *1 (S.D.N.Y. May 20, 1997). Finally, Plaintiff challenged (unsuccessfully) a 1990 conviction for resisting arrest at the appellate level in 1992 and 1993. *New York v. Caidor*, 589 N.Y.S.2d 540 (N.Y.S. App. Div., 2d Dept., 1992), *appeal denied*, 594 N.Y.S.2d 732 (N.Y. 1993).

in this action) had adequate notice of the consequences of failing to properly respond to Defendants' Rule 7.1 Statement, in satisfaction of the notice requirement imposed by *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996), and Local Rule 56.2.

As a result, the following material facts are undisputed: (1) on March 8, 2004, Plaintiff went to the Erie Boulevard branch of M&T Bank in Syracuse, NY, and unsuccessfully tried to retrieve a credit card that had been taken by an automatic teller machine two days before;[4] (2) in a further attempt to retrieve the credit card on March 8, 2004, Plaintiff then went to the South Salina Street branch of M&T Bank, where he became so disruptive and uncooperative that M&T Bank Regional Security Manager John Doyle–in Defendants' presence–closed Plaintiff's bank account (pursuant to M&T Bank's policy and procedures), offered him a check for the amount that had been in his account (which Plaintiff refused, saying, "Keep it"), and told him not to go back into M&T Bank or he would be arrested;[5] (3) in yet a further attempt to challenge the action taken by the bank on March 8, 2004, Plaintiff then went to the South Warren Street branch of M&T Bank;[6] (4) after being advised that Plaintiff was at the South Warren Street branch, Mr.

---

[4] (*Compare* Dkt. No. 49, Part 15, ¶¶ 1, 5, 8 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶¶ 1, 5, 8 [Plf.'s Rule 7.1 Response, admitting referenced facts].)

[5] (*Compare* Dkt. No. 49, Part 15, ¶¶ 9, 19, 20, 22, 23 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶¶ 9, 19, 20, 22, 23 [Plf.'s Rule 7.1 Response, failing to support his "denial" of the referenced facts with any accurate record citations, as required by Local Rule 7.1(a)(3)]; *see also* Dkt. No. 49, Parts 4, 13, 14 [cited by Defs. in the relevant paragraphs of their Rule 7.1 Statement].) It is worth noting that Plaintiff was also told by the branch manager that bank personnel would "cut the card." (Dkt. No. 52, Part 2, ¶ 23 [Plf.'s Affid.].)

[6] (*Compare* Dkt. No. 49, Part 15, ¶¶ 24-25 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶¶ 24-25 [Plf.'s Rule 7.1 Response, admitting referenced facts].)

Doyle then arrived there and told Plaintiff–in Defendants' presence–to leave the bank;[7] (5) however, Plaintiff refused to leave, stating that he intended to talk to the Branch Manager, Paul Bacher;[8] and (6) as a result, Mr. Doyle then told Defendants to arrest Plaintiff for trespass, only after which did Plaintiff offer to leave.[9]

Based on these undisputed facts, the Court concludes that no rational fact-finder could conclude that Defendants lacked probable cause to arrest Plaintiff for the violation of trespass (under N.Y. Penal Law § 140.05) at the South Warren Street branch of M&T Bank on March 8, 2004. The Court reaches this conclusion for the reasons offered by Defendants in their memorandum of law. (Dkt. No. 49, Part 16, at 8-13 [Defs.' Memo. of Law].) The Court would add five points to Defendants' analysis.

First, whether Plaintiff is correct that bank personnel would have given him the credit card in question back if they had more quickly "checked his account" (a fact of which the Court is suspicious given the undisputed difference between the name on the credit card and the name

---

[7] (*Compare* Dkt. No. 49, Part 15, ¶¶ 26-32 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶¶ 26-32 [Plf.'s Rule 7.1 Response, failing to support his "denial" of the referenced facts with any accurate record citations, as required by Local Rule 7.1(a)(3)]; *see also* Dkt. No. 49, Parts 4, 5, 8, 11, 12, 13 [cited by Defs. in the relevant paragraphs of their Rule 7.1 Statement].)

[8] (*Compare* Dkt. No. 49, Part 15, ¶ 28, 32 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶ 28 [Plf.'s Rule 7.1 Response, failing to support his "denial" of the referenced facts with any accurate record citations, as required by Local Rule 7.1(a)(3)]; *see also* Dkt. No. 49, Parts 4, 5, 8, 11 [cited by Defs. in the relevant paragraphs of their Rule 7.1 Statement].)

[9] (*Compare* Dkt. No. 49, Part 15, ¶¶ 29-34 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶¶ 29-34 [Plf.'s Rule 7.1 Response, admitting the facts asserted in Paragraph "33," and failing to support his "denial" of the referenced facts in the other Paragraphs with any accurate record citations, as required by Local Rule 7.1(a)(3)]; *see also* Dkt. No. 49, Parts 4, 5, 8, 11, 12, 13 [cited by Defs. in the relevant paragraphs of their Rule 7.1 Statement].)

on the account) is immaterial to Defendants' motion, because the grounds giving rise to the closing of Plaintiff's bank account and his ejection from M&T Bank were his disruptiveness.

Second, whether (at the South Salina Street branch of M&T Bank) Mr. Doyle told Plaintiff, or Plaintiff understood, that he was not to go back into *the South Salina Street branch* of M&T Bank or *any* M&T Bank is also immaterial, because it is undisputed that (1) Plaintiff had been ejected from the bank because of his disruptiveness, (2) Plaintiff had been informed that his account had been closed, and (3) Mr. Doyle later told Plaintiff to leave the South Warren Street branch of M&T Bank.

Third, whether Plaintiff could be deemed to have had property at the South Warren Street branch of M&T Bank during the time in question (a question that this Court answers in the negative due to the fact that Plaintiff's "property" apparently consisted of an abandoned check located at the South Salina Street branch) is also immaterial, because it appears that generally a bank has the authority to revoke the invitation or license of a non-account holder to be present on its premises under certain circumstances, even when the bank holds funds to which the non-account holder is entitled.[10]

Fourth, whether Plaintiff attempted to leave the South Warren Street branch immediately before he was arrested is also immaterial, because that attempt occurred only after probable cause arose, and such probable cause to arrest a person for trespass does not automatically

---

[10] *See Montana v. Allum*, 114 P.3d 233, 236-41 (Mont. 2005) (affirming conviction of non-account holder for trespass at bank because bank had authority to eject him due to disruptiveness even though he held $2,000 check drawn on bank). Indeed, it would appear that this authority may be exercised over an account holder. *See City of Columbus v. Applegate*, 98AP-485, 1999 WL 25146, at *1-2 (Ohio Ct. App. Jan. 19, 1999) (affirming conviction of account holder for trespass at bank after he had been notified that he was no longer welcome on the premises)

dissipate upon the person's attempt to leave the premises. *See New York v. Roque*, 723 N.Y.S.2d 39, 40 (N.Y.S. App. Div., 1st Dept., 2001) (probable cause existed to arrest suspect for criminal trespass after observing him in apartment building, where suspect saw officers, acted suspiciously, and attempted to leave building); *New York v. Mercado*, 695 N.Y.S.2d 360, 361 (N.Y.S. App. Div., 1st Dept., 1999) (probable cause existed to arrest suspect for criminal trespass where officer observed suspect leaving vacant apartment in a drug-prone building, and officer knew that earlier that morning the building's managing agent had executed a "trespass affidavit").

Fifth, in her decision of May 17, 2004, Syracuse City Court Judge Kate Rosenthal did not rule that Defendants lacked probable cause to arrest Plaintiff for the violation of trespass under N.Y. Penal Law § 140.05, but only that, after hearing all the testimony at trial, no reasonable juror could find–beyond a reasonable doubt–that Plaintiff had committed the violation of trespass under N.Y. Penal Law § 140.05. (Dkt. No. 49, Part 10, at 3-5 [Ex. G to Bergh Decl., attaching pages "120" through "122" of hearing transcript].)

For all of these reasons, the Court dismisses Plaintiff's false arrest claim.

### B.     Unlawful-Strip-Search Claim

For the sake of brevity, the Court will not repeat the legal standard governing Plaintiff's claim of an unlawful strip search, but will simply refer the parties to Judge Scullin's correct and succinct summary of that legal standard in his Memorandum-Decision and Order of March 27, 2006. *See Caidor*, 2006 WL 839547, at *6.

In his Complaint, Plaintiff alleges that he was strip searched in the Onondaga County Justice Center on March 8, 2004. (Dkt. No. 1, ¶ 19 [Plf.'s Compl.].) As an initial matter, the

Court can find no admissible record evidence that any such strip search even occurred. Plaintiff's Complaint does not constitute such evidence because it is not verified. (*See* Dkt. No. 1.) Nor are either Plaintiff's Rule 7.1 Response or his memorandum of law verified. (*See* Dkt. No. 52, Parts 3-4.) Plaintiff's affidavit, which is verified, does not mention the alleged strip search. (*See* Dkt. No. 52, Part 2.) Finally, Plaintiff's Citizen Complaint, filed with the City of Syracuse Citizen Review Board on March 12, 2004, is not verified, nor does it allege that any sort of search or a visual body cavity inspection occurred (only that he was forced to strip). (*See* Dkt. No. 49, Part 7, at 2-6 [Ex. D to Bergh Decl., attaching Plf.'s Citizen Review Board Compl.].)

In any event, even assuming a strip search occurred, Plaintiff's Complaint is vague as to how Defendants were involved in that strip search. (Dkt. No. 1, ¶¶ 18-22 [Plf.'s Compl.].) Out of special solicitude to Plaintiff, Judge Scullin liberally construed Plaintiff's Complaint as alleging that Defendants directed one or more unidentified deputy sheriffs to strip search Plaintiff. *See Caidor*, 2006 WL 839547, at *6 & n.16. Assuming this is what Plaintiff was alleging in his Complaint, Plaintiff has adduced no admissible record evidence of such an allegation.[11] Nor is it is clear that, as Syracuse City police officers, Defendants would have had the authority to issue such a directive to deputy sheriffs, who are employed by Onondaga County.     In opposing Defendants' motion for summary judgment, Plaintiff now argues that

---

[11] Nor has Plaintiff adduced any admissible evidence that Defendants were the individuals who personally strip searched Plaintiff. (*Compare* Dkt. No. 49, Part 15, ¶ 42 [Defs.' Rule 7.1 Statement, asserting referenced facts and supporting those assertions with accurate record citations] *with* Dkt. No. 52, Part 4, ¶ 42 [Plf.'s Rule 7.1 Response, admitting referenced facts]; *see also* Dkt. No. 49, Parts 7, 12 [cited by Defs. in the relevant paragraphs of their Rule 7.1 Statement].)

10

Defendants are liable for the strip search he allegedly experienced because the strip search was caused by "the language of the complaint, arrest report and incident report." (Dkt. No. 52, Part 3, at 17-18.) The Court can find no language in any of the these documents from which a rational fact-finder could conclude that Defendants caused the alleged strip search. (*See* Dkt. No. 49, Parts 4-6, 8.) It bears noting that an officer does not become liable to an individual for an unlawful strip search simply because the strip search was conducted after the officer arrested the individual (and authored an arrest report and/or incident report).[12] This is especially true where, as here, no admissible record evidence exists that the officer was present at the alleged strip search. It must be remembered that personal involvement is a requirement to establish liability under 42 U.S.C. § 1983 (the statute under which Plaintiff asserts his Fourth Amendment strip search claim against Defendants).

For all of these reasons, the Court dismisses Plaintiff's unlawful-strip-search claim.

### C.     Malicious Prosecution Claim

"Although malicious prosecution is traditionally a common law tort, it also provides a basis for liability under 42 U.S.C. § 1983, and [f]ederal courts borrow its substantive elements

---

[12]     *See Gonzalez v. City of New York*, 03-CV-1260, 2006 WL 1995127, at *4 (E.D.N.Y. July 14, 2006) (granting arresting officers' motion for summary judgment dismissing arrestee's unlawful-stip-search claim against them based on lack of personal involvement where plaintiff offered no evidence that arresting officers participated in strip search); *Dettelis v. City of Buffalo*, 3 F. Supp.2d 341, 348-49 (W.D.N.Y. 1998) (granting arresting officer's motion for summary judgment dismissing arrestee's unlawful-stip-search claim against him based on lack of personal involvement where arresting officer was merely present in room and laughed while arrestee was subjected to strip and body-cavity searches by other officers, and arresting officer was not supervisor of officers at cellblock, nor in a position to tell them what to do about search); *cf. Vogeler v. Colbath*, 04-CV-6071, 2005 WL 2482549, at *7 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment to defendant dismissing plaintiffs' unlawful-stip-search claim where plaintiffs failed to show defendant was personally involved in that their only evidence was that defendant's name was on arrest reports).

from state law." *Caidor*, 2006 WL 839547, at *7 [internal quotation marks and citations omitted]. "Under New York law, to state a claim for malicious prosecution, a plaintiff must establish four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id*. [internal quotation marks and citations omitted]. "In addition, a plaintiff asserting malicious prosecution in violation of his Fourth Amendment rights must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id*. [internal quotation marks and citations omitted].

Here, the issues presented by Defendants' motion regard the third and fourth elements of this test–the lack of probable cause and the existence of actual malice. (*See* Dkt. No. 49, Part 16, at 13-16.)[13] For the reasons stated above in Part III.A. of this Decision and Order, and the reasons offered by Defendants' in their memorandum of law, the Court concludes that Defendants possessed probable cause for commencing a criminal proceeding against Plaintiff. (*Id*. at 15.) The Court would only add that, based on the current record, nothing occurred, or was learned, after Plaintiff's arrest on March 8, 2004, and before his criminal trial on May 17, 2004, that dissipated the probable cause obtained by Defendants to arrest Plaintiff for trespass on March 8, 2004. Whether or not information was developed after Plaintiff's arrest that led Defendants to believe that Plaintiff in fact was the person to whom the credit card in question was assigned is of little if any consequence under the circumstances: when he refused Mr.

---

[13] The Court need not, and does not, address Defendants' argument regarding whether Plaintiff's experienced a post-arraignment deprivation. (*See* Dkt. No. 49, Part 16, at 13-16.)

Doyle's order to leave the South Warren Street branch of M&T Bank, Plaintiff knew (or had reason to know) that the grounds giving rise to the prior closing of his bank account and his ejection from M&T Bank were his disruptiveness, not his alleged "mistaken identity."

Moreover, for the reasons offered by Defendants' in their memorandum of law, the Court concludes that no admissible record evidence exists that Defendants commenced the criminal proceeding against him maliciously. (*Id.* at 15-16.) Plaintiff has offered only speculation or conjecture that Defendants commenced a criminal proceeding against him because he is African American.

For all of these reasons, the Court dismisses Plaintiff's malicious prosecution claim.

Finally, the Court notes that, because it has found adequate grounds upon which to grant Defendants' motion and dismiss Plaintiff's Complaint, it need not, and does not, reach the merits of Defendants' alternative argument that they are protected from liability as a matter of law by the doctrine of qualified immunity. (*Id.* at 16-18.)

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED**, and Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 26, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge